We have four cases on the calendar this morning. Two patent cases from district courts, a bid protest case from the Court of Federal Claims, and a trademark case from the Patent Office that is being submitted on the briefs and will not be argued. Our first case is Molon Motor and Coil Corporation v. Nidec Motor Corporation, 2019-1071. Mr. Nero. Good morning, Your Honors. Raymond Nero, Jr. on behalf of Plaintiff Appellant Molon. May it please the Court. I think, as with all appeals, it's important to start out with a standard of review. In this case, it's de novo review with no deference to the district court. In fact, because this was the grant of summary judgment, this court has said it gives no deference to the district court and reapplies the same standard as a district court. On summary judgment, one of the most important safeguards is that all inferences and doubts should be drawn in favor of the non-movement, in this case, Molon Corporation. And I challenge opposing counsel when he stands up here to point to a single piece of evidence where an inference was drawn in our favor. When the court is addressing counsel, please. I'm sorry, Your Honor. The two provisions that we're dealing with are quite different, aren't they? I don't think so, Your Honor. They both apply to the same patent, same rights under the same patent, same companies. Well, the covenant not to sue is rather limited. It relates to one patent. The settlement agreement is an exclusive license, which is quite different. It is limited in other respects. They seem to me to be quite different. And the standard is not whether the two agreements are different because that's an impossible standard to reach. If you have an integration clause, by its very nature, it says all covenants that pertain to the same subject matter. That's the question. What is the subject matter? And the subject matter is the rights under the 915 patent. Both agreements deal with that exact same subject matter. Same patent, rights under that same patent are being addressed. Which rights? Can you enumerate the rights you're talking about? The rights in the 2006 covenant, it's simply a covenant not to sue under the 915 patent. And then in the agreement, which it settled the same litigation. Both agreements relate to the same case. The covenant not to sue was issued in February of 2006, and that dealt with the 915 patent, which was peeled off. And then as the case went on, Merkle Corp. and Milan agreed to settle the entire case, the whole umbrella. And within that was subsumed the 2006 agreement because it says all covenants. That's your argument, but the settlement agreement doesn't explicitly say that the 2006 covenant was revoked. That's true. It does not say that. And that's the real problem for you and for us, isn't it, to determine whether the intent of that later settlement agreement, which I think the district court correctly notes is both broader in some senses and more limited, was intended to revoke a covenant on a different topic. The integration clause also doesn't mention or reference by specifics prior. We're looking at the integration clause alone. I think there were problems. It's a pretty generic integration clause. It doesn't answer the fundamental question, which is, does that later settlement clause intend to revoke the prior covenant? And I have a hard time finding how they're directed at the same subject matter because, again, the covenant addressed two specific patents. It was a broad agreement not to sue, but it didn't give an ability to license, whereas the later settlement agreement was for a whole portfolio of patents, including the two that were an issue in the covenant, but gave a further ability to license but in a much narrower market. Why aren't those just two different distinct subject matters? I think the court is defining the subject matter too narrowly, and on summary judgment especially. What is your view of what the subject matter of these two clauses are? The two clauses relate to the exact same patent. Well, aren't you drawing it too narrowly when you talk that way? Because they don't relate just to the 915 patent. The settlement agreement relates to how many, like six or eight patents? So aren't you drawing it too narrowly when you want to focus only on what it said about the 915 patent in each agreement? If you look at the integration clause, it also references prior agreement, the drafts of the prior drafts of the agreement that ended up as the 2007 agreement. But none of those drafts are listed or referenced. We're still talking about the matter set forth herein, so I think we still have to look at whether the settlement agreement in 2007 is talking about the same subject matter or a different subject matter. Right, and we're looking at what the parties intended by that. And I think to look at what the parties intended, the other side agrees that, for example, drafts of the settlement are subsumed with an integration clause, even though they're not referenced specifically. How many patents are included in the settlement agreement? I think it's a dozen. That is not just 915. Correct. Big difference. I think there's no question the settlement agreement is more encompassing in that it involves more patents. But also less encompassing because it gives a license but only in a specific market, whereas the covenant was much broader in that sense. Right, and I think the parties are entitled to negotiate modifications to the covenant. I mean, the problem for us is that neither of you explicitly said what was going to happen with that covenant not to sue. You could have easily written that into the settlement agreement and said either it's revoked or it stays in effect, and neither of you did that, so we're left with trying to determine what I think your argument is, that it's an implicit revocation. That's correct. It's not specifically referenced in there, and they could have done that. I think saying all covenants is broader. If you intended to revoke it, why didn't you put that in the settlement agreement? In my experience, when you have a broad clause, if you start adding limitations or specifics to it, it's interpreted sometimes more narrowly. If we say all covenants, isn't that broader than just referencing a single covenant? Yes, but, again, it doesn't say all covenants with regard to anything. It says with regard to the subject matter of the settlement agreement, which was a dozen patents, as you say, and a limited license. Doesn't both agreements address the right to sue, exclusivity, and limitation of market? Correct. And isn't that the subject matter of both of these agreements? Yes, it is, Your Honor. What limitation of market is it there in the covenant not to sue? The covenant not to sue is limited to the 915 patent. I'm not asking about which patent. I'm asking about which market. Clearly, the settlement agreement says it's limited to the Kinetec exclusive market. Where does the covenant not to sue limit it to any market? Well, it applies to Merkle Corp. or presently supplies products by way of manufacture and or sale thereof in the United States. So it's dealing with products that they have currently in the market in the United States. How is that a limitation of the market? This was a United States infringement case. If you're giving them a covenant not to sue on a U.S. patent, how would it have any effect outside the United States market? Well, it's also just with respect to products that they previously or presently made, used, or sold. So it's a limitation in the sense of the products as well. That's not a limitation of the market to who they can sell. It's a limitation of what they can sell. And I would consider that part of the market in terms of what products they can sell. Are there any particulars of these agreements that are confidential and that we shouldn't name? There are in the settlement agreement, the monetary payment, the amount is confidential. Although I think that shows that Merkle Corp. certainly had an incentive to settle the case. I mean, back was against the wall, so to speak. So they definitely paid significant consideration both monetarily and were motivated then to modify the terms of the 2006 covenant. Why? I mean, you'd already given them a broad covenant not to sue on the 915. I mean, sure, maybe on the other patents that they got a settlement on, they were motivated. But on the 915, apparently, you didn't have enough belief in its validity to not give up the right to sue on it earlier in the litigation. Is that a fair reading of the record, too? I don't think so. I mean, I don't think any of this is useful in trying to hypothesize about what the party's intentions were. Because that's all – first of all, it's not in the record, and it would be parole evidence anyway. What we're looking at is these two different clauses and determining under what I think is the right law whether they cover the same subject matter. And you have to look, I think, within the four corners of the document what the party's intent was from that. And if they already had rights in the 915 patent, these broad irrevocable rights, as they say, why would they even include that patent in the later settlement? Well, because the later settlement gives them the additional right not only not to be sued on it but to license it in an exclusive market. So it is giving them an additional right that they didn't have from the 2007. Isn't that exactly why they might have wanted to include it? It gives them rights and it takes some away. It makes it an exclusive market. Isn't that their bargain? I think that modifies the 2006 agreement in terms of what rights they're being given under that patent. Why isn't that just giving them additional rights, not modifying the previous covenant? Because the integration clause says all covenants related to the same subject matter. And we think at least on summary judgment. Why does summary judgment matter here? This is a legal question, isn't it? Well, you have to draw inferences if you're looking at what the party's intended from the agreement. I think you have to draw the inference of what they intended in our favor. Contract interpretation? Contract interpretation is a matter of law, but you do have to look at the facts as well and the evidence. But we're looking at the actual language. That's correct. We're not arguing that this is ambiguous and that we need to go to parole evidence or something about intent. We're looking at the language. That seems to me to be a de novo legal question. You don't get an inference on a legal question. We just determine it as a matter of law. You do not go to parole evidence. I agree with that. That's part of why the integration clause, at least the first portion of it, is in place. It's so that you don't look at the negotiations or the drafts that went back and forth leading up to it. That's the first part of the integration clause, even though there are no specifics in there. Mr. Narrow, you're in your rebuttal time. You can continue or save it. I'll save it. Thank you, Your Honor. Mr. Elsher. May it please the court and good morning, Your Honors. Molon does not cite the court a single case where an irrevocable and unconditional covenant not to sue could be subsequently extinguished. We're looking at Illinois law in this case, correct? We are, Your Honor. Are there any on-point Supreme Court cases in Illinois? There are not that I'm aware of. Okay. The four cases that I think are most on point involve agreements. And let me be clear, there's two situations. What would you say, Counselor, did the settlement agreement modify the 2006 agreement in any way? No, it doesn't. And the 2006 activity wasn't an agreement. It was a unilateral covenant not to sue filed by Molon. And was that right, the right to sue, changed in any way by the settlement agreement? The terms were certainly changed. In the 2006 covenant not to sue, it covered all NEDAC products at the time. And when I use NEDAC just for the record, it was Merkle Corp, but I'll use NEDAC just so the record's clear. In the settlement agreement? I'm sorry? And in the settlement agreement? In the settlement agreement, there were more than a dozen patents covered, by the way. It was limited to— Other than that, I mean, because the 915 patent is cited and addressed by the settlement agreement. But was the right to sue in the 2006 agreement, was it modified in any way in the settlement agreement? The covenant from 2006 gives NEDAC no right to sue. The right to sue— How about in the settlement agreement? In the settlement agreement, that was a different term, which only comes to reinforce the fact that there are different terms. Yes, but did it affect the right to sue? Well, certainly in the settlement agreement, in the event that Molon did not sue, NEDAC certainly had a subservient right to sue in that event. Okay, so that's one term that's the same, correct? I mean, that's one subject matter that's the same in both agreements. The right to sue, let's call it. Your Honor, I respectfully disagree. The 2006 covenant did not give any right to sue. It didn't give you a right to sue. It was just a covenant from them that they wouldn't sue you. Correct, Your Honor. So the right to sue in the 2007 agreement is a new right. It's a new right not covered. But it addresses—it may be a new right, but it does address the right to sue. That's a subject matter. The 2007 agreement gives the subservient right to sue. But under the AON decision, which is a 2006 appellate decision from Illinois, which we all agree is the law that controls here, it has to be same subject matter and same terms. And the district court in this case went through the agreements and compared. As I heard, Your Honors, I can tell that you've looked at these. There are some rights that are the same. There are some rights that are different. But on balance, they're not the same subject matter and same terms. And if you look at the four controlling cases here, on this record we have AON. We have Midwest Builder. We have Illinois Concrete. And I guess the other case that really doesn't count is the Houngebrook case. But in each of those cases, there's two situations. One, negotiations. So we have an agreement. The reason lawyers put in integration clauses into agreements for the most part is we had three to four months of negotiation. And we want to put an integration clause in so later we're not arguing about parole evidence. In this case, we're not dealing with that first scenario. In their opening brief, that was the case law they cited. What we're dealing with is extinguishing a separate agreement. And under Illinois law, that's a big deal. Because we have distinct agreements. And we're going to have a subsequent agreement with a boilerplate integration clause. And we're going to wipe out something different. Under Illinois law, that's a heavy burden. Under the AON case, it's not. I get your point. But clearly, you both know about the covenant not to sue from 2006. And it would have sure made it a lot easier for everybody if you would have explicitly addressed whether it was going to stay active or not. Given that you were altering certain terms about what you could do with the 9-1-5. I agree that if the parties, so we're trying to get to the intent of the parties. I heard my friend across the aisle say that. I agree with it. It's the intent of the parties. If the parties intended to extinguish a covenant not to sue that was entered into in the same litigation a year earlier, it is impossible to believe. And negotiations lasted for five months. It's impossible to believe that two sets of skilled lawyers who apparently allegedly according to their theory talked about extinguishing a covenant not to sue and never mentioned it would not happen. And that's what the district court judge said at page 11, appendix 11 of his decision. He notes as kind of his final just kind of analyzing what happened here. He said it's ways in our favor the fact that if two sets of skilled lawyers in a litigation intended to wipe out a covenant not to sue even assuming legally you can do that because it was forever. Yeah. I mean you started off with that and seemed to suggest that you couldn't. But of course you could. Couldn't you? During the course of the litigation they offered you a significant consideration and said okay early on in the litigation we gave you this covenant not to sue but things have changed. We want to give you all these other things if you give this up. I mean that's an agreement you can make, can't you, on behalf of your client. Under Supreme Court law and this court's precedent to defeat declaratory judgment jurisdiction a covenant not to sue has to be unconditional and end the litigation. But that jurisdictional question doesn't have anything to say about whether the parties can through negotiations revoke that covenant not to sue. I would agree with you that I don't know the answer to that question. I mean it seems like you're making an argument you don't need. Well to defeat declaratory judgment jurisdiction, it's an interesting question. This case doesn't turn on it because the district court found that the subject matter was not sufficiently aligned and the agreements are different. But I think it is interesting from a matter of declaratory judgment jurisdiction if you have to have an unconditional covenant not to sue whether you can revoke it later. But I'm not addressing that. What I would say is, and this is what the district court said is, it would have been mentioned. So that is a factor that weighs in favor. Let me ask you a question. Didn't the 2007 agreement limit the practice of the panzoni to the kinetic market and limited Merkle that they could not practice outside of that area? The 2007 agreement only allows under the dozens of patents that were part of that global settlement to practice within the kinetic market. That's correct, your honor. Well, how does that not affect the information or revoke the 2006 agreement covenant not to sue? Because under that agreement, Merkle had the ability to practice the patent anywhere. Under the 2006 covenant not to sue, that only applied to NEDEX existing products, all products for the 915 and 726. But they could practice them anywhere. We could practice them anywhere. That's correct. And under the settlement agreement, that was limited to the kinetic market. Well, the covenant not to sue was never mentioned. So I would respectfully disagree that that covenant not to sue was limited. It was never mentioned. Under the 2007 agreement, the additional… Not to sue. The 2006? The 2006 agreement would preclude Molon from suing NEDEX for selling existing products under the 915 and 726 patents. It allowed them to practice the patent anywhere. It did. Right. Under the 915 and 726 for existing products only, not future products, but existing products. And that was changed in the 2007 settlement agreement. I disagree that it was changed. Because the ability to practice the patent, the 915 patent, was limited to the kinetic market. Under the 2007 agreement, NEDEX got the additional opportunity to sell future products into the limited kinetic market. But you didn't have the opportunity to sell anywhere. I mean, to practice a patent everywhere. Not with future products, we didn't. Under the covenant not to sue for existing products, we did. Which is why we're here. Our client thought and still thinks. I mean, it comes down to whether we see the 2007 agreement as altering the 2006 agreement or giving you additional rights in addition to the covenant not to sue in 2006, right? Your view is the 2006 covenant that was unilaterally given by them, it wasn't an agreement, gave you certain limited rights to practice those two patents with regard to existing products. The 2007 agreement doesn't revoke that, but gives you additional rights to practice with regards to new products and also to license with regards to new products in a limited market. And your view is those are new terms. Those don't displace the covenant. Yes, it is fair. As the district court found, the agreements are broader and narrower in various respects. Under the controlling law of Illinois, which the district court judge carefully studied and applied, AON says it has to be the same subject matter in the same terms. On this record, I don't know how we could ever conclude it's the same terms. What would hypothetically happen if instead of the dozen or so patents in the settlement agreement, the settlement agreement addressed the same two patents that were in the covenant not to sue, but then had the same terms that you're being given the additional right to license and sell new products, not just pre-existing ones. Would that be the same subject matter if it was the same exact patents? So certainly, if you eliminate all the other patents, you've created a more interesting hypothetical. In the 2007 agreement, even in your scenario, though, NEDAC got the additional rights to sell future products in a limited market. So you'd still have an interesting question on your hand. I don't think it's nearly as interesting on this record because it was dozens of patents as part of a global settlement. And I would ask the court to look carefully at the Midwest Builder case. Because in that case, there was a subsequent contract, and they found part of the terms merged and another part not merged. And the part that was not merged were the rights that weren't listed in the other contract. In that case, there was a credit application. And the credit application had two types of phrases. One was penalty provisions if you breached. The other was payment provisions. And ultimately, the court found merged the payment provisions because the payment provisions identically were in both the first contract and the second. In the first contract, there were penalty provisions. If you breach, you get attorney's fees and costs. The Illinois court found that the penalty provisions were not merged because they weren't mentioned in the second contract. Yes, Your Honor. The covenant and the settlement agreement both relate to the same nucleus of operative facts, did they not? Came out of the same transaction litigation? They came out of the same litigation for sure, Your Honor. So isn't that the same subject matter? I would disagree because this litigation involved three patents. And then the ultimate settlement agreement involved a lot of patents that weren't even in the litigation. Well, most of them are foreign patents, right? Well, some were foreign, some weren't. But I mean, those are patents that weren't part of the litigation. What does it matter if the latter agreement also included the 915 patent? I mean, your argument is that if there's a lot of patents in the settlement agreement, then somehow the law changes with respect to one of the patents, to the 915 patent. I would not have said it. I mean, I think there's a lot more to the argument than that, as the district court found. There are provisions in the agreements that are broader and narrower in different terms. And what the district court held, and I think correctly so under Illinois law, is that the terms don't sufficiently line up. Okay, so let's look at the part of the settlement agreement that says this agreement is an integrated agreement and constitutes, and I'll get you the, the citation is in JA35. We want to look at that real quick. I have it, your honor. It talks about the subject matter of this agreement. It talks about, it says there are no representations, promises, or agreements pertaining to the terms or subject matter. So they do address the terms of the agreement, and they're saying terms or subject matter of this agreement, whether expressed or implied, that are not set forth in this agreement. Well, I think that's the issue, is the subject matter, and that's what the district court analyzed. Well, but you're arguing it doesn't address the same terms. The covenant doesn't. The covenant had all of NEDX products. That's undisputed. All of them. So this case did not involve all of NEDX products. The covenant not to sue involved two patents, 915 and 726. We could make existing products across all products under those two patents without being sued. If we get to the covenant not to, or the, excuse me, the settlement agreement, that had to do with a number of patents, the ability to sell into a specific client base, this kinetec market as it was defined, and the exchange of some money. So the terms were substantially different. Your point is that to determine the subject matter of this agreement, you look at the agreement, which covers more than the 915 patent. Correct. You have to compare the agreements. And the one thing I would like to add is I do disagree that there would be any inferences in the context of this case. It was a de novo issue, and below there were no facts in dispute. But on the provision that I cited, and I brought it up because you cited Kraft as requiring both terms and subject matter, that the covenant has got to relate to both terms and subject matter. The AN case says terms and subject matter. And also the Kraft case, correct? Yeah, Kraft and Illinois Concrete as well. Okay. So, but here I just wanted to point out and see what your view is on this aspect of the agreement, this provision that does address both the terms, and it doesn't say terms and subject matter. It modifies this terms or subject matter. It doesn't have to address the exact terms. It has to address the more general, broad subject matter. In AON, under Illinois law, it says same subject matter and terms. Here, I don't think the terms are really that close at all. There are some similarity, but similarities are not. But the agreement addresses that point. It says it doesn't have to address identical terms. Just as long as the subject, it says terms or subject matter. In the actual... But this is written outside of the AON case. It doesn't say and, it says or. Well, I think it's a philosophical question. I understand Your Honor's point. I think it's a philosophical question in that the same subject matter when you're talking about agreements are the terms. But I don't know that this case would turn on that distinction unless you think I'm missing something. Well, I see your argument is that the subject matter of the two is not the same. Isn't that what you've been arguing? It is for sure, Your Honor. Yes, as the district court found. So, you're not arguing that it's the terms. The terms have to be the same. I think the subject matter is the terms and there has to be a substantial identicality of the terms would be my position. What we're trying to figure out is did the parties, are these agreements sufficiently close that we're going to assume because of a boilerplate integration clause that they intended to extinguish something that was not expressly mentioned, whereas the district court judge said common sense would tell you that two groups of lawyers that intended to extinguish a covenant not to sue would have mentioned it. Thank you, counsel. Thank you, Your Honor. Thank you for your argument, Mr. Niro. I realize I only have a couple of minutes, but opposing counsel said that there are no inferences here, but then he talked about common sense being that two sets of lawyers would not have come up with an integration clause without specifically referencing a 2006 prior covenant. I think that's an inference. Two sets of lawyers, in my view, when they contract an integration clause that's as broad as this, would not start listing specifics to narrow it. As far as the irrevocability and the terms, parties can contract away rights. If a covenant not to sue, they're saying it's irrevocable forever, but parties can obviously, Molon couldn't revoke it unilaterally, but the parties could contract away those rights, and the same thing with the terms. Or subject matter, parties contracted to that. So if the agreements had to be the same terms, there would be no reason for an integration clause. And, again, I think counsel... Well, that's not precisely true, is it? Isn't the reason for the integration clause in most contract settings to limit the reference to perch parole evidence after the fact? I think that's one component of an integration clause, and another is set forth here. There's a second clause to that which talks about covenants. If they wanted these rights to continue in the covenant, why didn't they mention it in the settlement agreement? So I think that's the inference I'm talking about. Well, the real answer is both of you should have done a better job of drafting the settlement agreement  It certainly could have been drafted, and respectfully for both counsel, neither of us were involved in that. Thank you, Your Honor. Thank you. We will take the case under advisement.